[No. 23514. Department One. March 25, 1932.]

McPHERSON BROS. COMPANY, *Appellant,* v. W. E. BUELL *et al., Respondents.*[1]

[1]Reported in 9 P. (2d) 348.

*W. C. Gresham, William O'Connor,* and *Hughes & Hughes,* for appellant.

*Patterson & Davis* and *Hartman & Hartman,* for respondents.

TOLMAN, C. J.—This is an equitable action in which plaintiff sought to obtain injunctive relief against alleged trespass and to quiet title in the plaintiff to a certain strip of upland and certain shore land adjoining, all bordering on the Columbia river in Okanogan county.

After a trial on the merits, the trial court entered a judgment dismissing the defendant Okanogan Douglas Inter-County Bridge Co., a corporation, against whom the plaintiff sought injunctive relief, quieting title in fee simple to the uplands in dispute in the defendant Buell,

"Save and except that said plaintiff be and it is hereby adjudged to have an easement in and to the above described uplands for a ferry site for the purpose of maintaining ferry apparatus, landings and approaches, and for the purpose of crossing to and from its ferry while navigating the waters of the Columbia river together with all necessary rights for the full, proper, and complete use and operation of its ferry, and the said defendant Buell, his servants, agents and employees be and they, and each of them, are forever restrained and enjoined from in any manner whatsoever interfering with plaintiff's use of such easement."

. And the court also decreed that the defendant Buell is the lessee from the state of Washington of all of the shore lands in dispute, and enjoined the plaintiff from in any manner using such shore lands,

" . . . except when passing over and above said shore lands in the course of navigation upon the waters of the Columbia river."

The plaintiff has appealed from this judgment, and the defendant Buell has cross-appealed from that part of the judgment which established in plaintiff an easement on and over the uplands.

The facts are so intricate, involved and unusual that it seems impossible to give a fair synopsis within any reasonable space.

The main question in the case, involving the title to the uplands and the easement thereon, is controlled by the facts. We have read all of the evidence, pro and con, and are satisfied that in no particular can we say that the evidence preponderates against the findings of the trial court. Full, complete and exhaustive written findings were made, and the interested or curious must be referred thereto for further information. It is sufficient for us to say that the evidence supports the findings, and the findings support the judgment on that issue.

While perhaps regarded as a minor issue at first, the now bitterly contested question, and the one which we find troublesome to decide, is whether or no the easement granted to the plaintiff over the uplands should be extended across the shore lands. If not so extended, it is useless; and only by so extending it can the plaintiff operate its ferry and the public continue to patronize that ferry. We devote ourselves, therefore, to a consideration of this question, and for a proper understanding, some outline of the facts must be given.

It appears that, prior to 1895, one Gamble operated a ferry at the point where the plaintiff still operates its ferry, and in so doing used the uplands and the shore lands here in question. Gamble ceased to operate

the ferry in the year 1895, and shortly thereafter a copartnership known as McPherson Brothers established a ferry at the same point, which has been operated continuously ever since. The ferry is intercounty in character, crossing the Columbia river from a point near the town of Brewster, in Okanogan county, to an opposite point on the Douglas county shore. As the ferry operates at all stages of the water, it can not always use the same landings, and as the water rises or lowers in the Columbia river, the landing places must be varied, and those landing places must be approached by different roads in part.

At the time of the trial, it was stated that, for thirty-six years, these conditions had been the same; and first the partnership and afterwards the plaintiff corporation, when it was organized, continuously, uninterruptedly, openly and notoriously occupied and used these shore lands as landing places, maintaining landings thereon for the landing of passengers, freight and vehicles, as the various stages of the water might require; that there were at least three distinct landing places: One for use when the river was at high-water stage, which is probably above the shore lands, and is reached by a road crossing the uplands in dispute; a second road branches off and leads to a lower landing, permitting driving onto the ferry at intermediate stages of the water; and still a third road again branches off and leads to the ferry landing which must necessarily be used at low-water periods.

These roads have at all times been kept in condition for travel and practical use by the plaintiff and its predecessors, and no question as to the use of these roads by the public and by the plaintiff had at any time been raised by anybody until the defendant Buell procured a lease from the state of Washington under date of February 27, 1928, purporting to demise to

him these shore lands for a period of five years at an annual rental of twenty-five dollars per year.

It is true that the plaintiff and its predecessors apparently operated the ferry without any official franchise or license up until the year 1927; but its operations formed a link in the public highway by which travelers using the highway on land entered upon the navigable water, which is also a public highway, and were ferried across to a point on the opposite shore where the highway on land again began. Such a service, carried on uninterruptedly and without protest for many years, as was done here, must vest some right in the operator as well as a right in the public, and we apprehend that the plaintiff had such an interest as the law would protect against a trespasser or a wrongdoer.

Upon the enactment of chapter 248 of the Laws of 1927, p. 382 (Rem. 1927 Sup., § 10361-1), for the first time there was provided a means by which a license, franchise, or, in other words, a certificate of public convenience and necessity might be granted for the operation of this ferry; and shortly after that act took effect, the plaintiff applied for such a certificate as an operator in good faith under the terms of the act, and a certificate was duly granted to it which is still unrevoked, and under which the plaintiff has ever since operated. Incidentally it appears that the plaintiff, as a ferry operator, at all times complied with the regulations of the war department of the United States, and so installed its towers and cables as to comply with Federal regulations.

The defendant Buell, who was one of the promoters of the toll bridge enterprise, and afterwards became an officer of and financially interested in the defendant bridge company, seems, at least some years before he applied for the lease already mentioned, to have been

fully advised of the fact of the operation of the ferry; and knew, or at least had facts which might have led to knowledge, that the plaintiff claimed an absolute right to use both the upland and the shore land in the operation of its ferry, as it had done for so many years. Knowing such facts, and so far as we can discover from the record, with no possible object in mind save only to put the ferry out of business and destroy a competitor of the bridge company, which was operating a toll bridge across the same stream at practically the same point, defendant Buell ascertained that there was an outstanding legal title to the upland strip and procured a deed for that, and on the basis of that deed, applied for and obtained a lease of the adjacent shore lands under Laws of 1927, p. 540, § 134 (Rem. 1927 Sup., § 7797-134), which provides:

"The commissioner of public lands is authorized to lease to the abutting upland owner any unplatted first class tide or shore lands or in case the abutting uplands are not improved and occupied for residential purposes and the abutting upland owner has not filed an application for the lease of such lands, may lease the same to any person, firm or corporation for booming purposes."

Buell's only real reason for obtaining the lease seems to have been that he thought it would help his investment in the bridge. He at that time, according to his testimony, owned nineteen per cent of the capital stock of the bridge company. He did testify in a vague way about the possible value of the shore land sometime in the future, but these general statements can not obscure his actual purpose. If the shore land has any value for its gravel, that value will not be seriously interfered with by the exercise of the plaintiff's easement across the property.

It would seem to have been the intent and purpose of the legislature, by enactment of this statute,

to permit one having fee simple title to upland to acquire the possession and use under lease of the abutting shore lands. It is somewhat doubtful whether the plaintiff would have been recognized as an applicant for such a lease. It did not have a legal title to the uplands of record; and while it claimed title by prescription, yet, as we have seen, when that issue was tried, it was held that it had only an easement. We can not say, therefore, that the plaintiff has been negligent in not having secured for itself a lease from the state protecting it in the use of these shore lands.

 Upon the other hand, regarding defendant Buell as the record owner of the uplands, still his ownership is incumbered and dominated by the easement vested in the plaintiff. His estate, though held by a fee title, is the servient estate, and he can only use the lands in such manner as not to interfere with the exercise of the dominant easement. It is a recognized fact that no stream can rise above its source. The source of Buell's right to lease the shore lands is his ownership of the uplands; and that being a subservient ownership, it would appear that, in equity, he should not be permitted to acquire any higher right or interest in the abutting shore lands.

It must be borne in mind that the public, as well as the plaintiff, the operator of the ferry, is interested here. If for thirty-six years the public has, without interruption of any kind, or protest or objection of any sort, been permitted to travel a highway or highways across both the uplands and the shore lands to the proper point where it could enter upon the ferry to cross the water highway, then no private individual, with sufficient knowledge to put him upon notice, should be permitted, for mere destructive purposes, to interject himself into the situation so as to interfere with

the public's use of the ferry or with the ferry operator's right to serve the public.

We are aware that the state of Washington is not a party to this proceeding, and we are well aware that the statutes of limitation do not run against the state. Therefore what the rights of the state may be, we do not now determine. But we are satisfied that equity calls for a holding that whatever rights defendant Buell may have acquired in the shore lands by the lease from the state, are in equity and good conscience impressed with the dominant servitude of the easement which has been decreed upon and over the uplands.

Whether defendant Buell be called a trustee *ex maleficio* of the leasehold; whether the parties be considered tenants in common of the upland under the familiar rule that the acquiring of a superior title by one inures to the benefit of both; or whether it be simply held that, in any event, so far as Buell is concerned, his leasehold interest in the shore lands is charged with the same easement as is his fee simple title in the uplands, seems wholly immaterial. The facts disclosed by the record under the plainest principles of equity demand, at least, that the plaintiff's easement as against the defendant Buell and anyone claiming or to claim under him, be extended over and across the shore lands, so that the plaintiff may exercise all of the rights and privileges upon such shore lands as have been exercised by it in the thirty-odd years past.

The judgment of the trial court will be modified by so extending the easement granted to the plaintiff upon the uplands over and across the shore lands.

In all other respects, the judgment is affirmed.

MITCHELL, PARKER, HERMAN, and BEELER, JJ., concur.